**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**COLLEEN DEMERS,**

          **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:06-cv-1235-Orl-31KRS**

**ADAMS HOMES OF NORTHWEST**
**FLORIDA, INC., and MATTHEW**
**MALONE,**

          **Defendants.**

## ORDER

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 27) and Defendants' Response thereto (Docs. 30).

**I. Background**

Plaintiff brings this case alleging violations of the Family Medical Leave Act of 1993, as amended, 42 U.S.C. §§ 2000(e), *et seq*. ("the FMLA"); Title VII of the Civil Rights Act of 1964, as amended, 29 U.S.C. §§ 2601, *et seq*. ("Title VII") and the Florida Private Whistleblower Act, Fla. Stat. §§ 448.01, *et seq*. ("the FWA").

In July of 2002 Plaintiff Colleen Demers ("Demers") became a licensed Realtor in the state of Florida and began training to become a Sales Agent for Defendant Adams Homes of Northwest Florida, Inc. ("Adams Homes"). Demers received an employee handbook and was paid an hourly

wage during her training.[1] Then, in August of 2002, Demers and Adams Homes entered into an Exclusive Marketing and Selling Agreement ("the Agreement") (Doc. 18-3 at 2), which was terminable at will by either party. (Doc. 18 at 2-3; Doc. 27 at 5).[2] The Agreement stated that it was not an employment contract, but did not indicate that Demers would be considered an independent contractor. (Doc. 18-3 at 2). When she signed the Agreement, Demers was given a copy of Adams Homes' Sales & Marketing Plan ("the Plan"), which provided the details of her relationship with Defendant.

From August of 2002 until January 11, 2006, Demers acted as a Sales Agent for Adams Homes, selling new homes and home sites to consumers in exchange for a commission. In February of 2003 Demers formed her own corporation known as Colleen Demers, Inc. ("CDI").[3] After that, Adams Homes began making Demers' commission checks payable to CDI. (Doc. 18 at 4; Doc. 27 at 4). Adams Homes did not provide Demers with medical insurance or retirement benefits and did not withhold taxes or social security contributions from her pay checks. (Doc. 18 at 5; Demers 1st Depo.[4] at 97). As a Sales Agent, Demers was given an employee discount of 5%, which she used to buy a home from Adams Homes on May 31, 2003. *See* Demers Aff. at Exh. 2.

---

[1] It is undisputed that Demers was an employee of Adams Homes during her training. *See* Gunn Depo. at 25.

[2] Periodically, the Agreement was renewed by the parties. (Doc. 18-3 at 3-6; Doc. 18 at 3, n.2; Doc. 27 at 5). The four embodiments of the Agreement contain substantially the same terms, and will be referred to collectively as "the Agreement" unless otherwise noted.

[3] Demers states that she formed CDI because she was advised by her General Manager, Lynn Kraum, that she should incorporate because it would benefit her "tax wise."

[4] Demers was deposed twice, first on April 19, 2007 ("Demers 1st Depo.") and then again on August 6, 2007 ("Demers 2nd Depo.").

According to the Plan, Sales Agents were allowed to take two weeks of vacation each year, however, these weeks could not be taken consecutively. Gunn Depo. at Pl. Exh. 2. There was no provision for maternity leave in the Agreement or the Plan, therefore Sales Agents had to use their vacation time. Malone Depo. at 17-18. If a Sales Agent took off more than two weeks in a year for this or any other purpose, her agreement with Adams Homes would be terminated. Malone Depo. at 17-18.

During her time as a Sales Agent, Demers was assigned to a model home by Adams Homes, which she was required to be present at for at least 5 days/week (including Saturday & Sunday) during hours specified by Adams Homes. Gunn Depo. at Pl. Exh. 2. Demers was also assigned a partner by Adams Homes, with whom she shared her model home and commission. Demers was required to monitor the appearance of her model home, however, Adams Homes paid for the telephone, utilities, maintenance and furnishings. Adams Homes determined which homes and/or home sites Demers could sell and, at times, limited the number of sales she could make. Demers 1st Depo. at 126. As a Sales Agent, Demers was supervised by Sales Manager Elizabeth Porter ("Porter") from June 1, 2005 until January 11, 2006. Porter Depo at 29. Sales Managers would fill out annual assessments of their Sales Agents, which they would keep on file but not share with the Agents. Adams Homes would also send "secret shoppers" into Demers' model home to evaluate her performance. (Doc. 18 at 6, n.4; Doc. 27 at 12).

In the summer of 2005, Demers informed Adams Homes that she was pregnant. (Doc. 18 at 6; Doc. 27 at 14). On January 11, 2006, Adams Homes informed Demers that it was terminating the Agreement. (Doc. 18 at 7; Doc. 27 at 15).

**II. Standard of Review**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

**III. Legal Analysis**

Plaintiff asks this Court to determine, as a matter of law, that she was an "employee" of Adams Homes under the FMLA, Title VII and the FWA. Defendants argue that Demers was an independent contractor, and therefore not covered by the FMLA, Title VII or the FWA.

**A. The FMLA**

When determining whether one is an "employee" under the FMLA, courts apply the same test used with regard to the Fair Labor Standards Act ("FLSA"). *See Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999); *Watson v. Drummond Co., Inc.* 436 F.3d 1310, 1316 (11th Cir. 2006). That test is the "economic realities" test.

> Under the FLSA, employment is defined with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S. Ct. 1344, 1350, 117 L. Ed. 2d 581 (1992) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728, 67 S. Ct. 1473, 1475, 91 L. Ed. 1772 (1947)). An entity is said to "employ" a person if it "suffers or permits" the person to work. 29 U.S.C. § 203(g). The "suffer or permit to work" standard derives from state child-labor laws and has been called "the broadest definition [of employee] that has ever been included in one act"" *Antenor v. D&S Farms*, 88 F.3d 925, 929 n.5 (11th Cir. 1996) (citing *Rutherford Food Corp.*, 331 U.S. at 728 n.7, 67 S. Ct. at 1476 n.7, and quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3, 65 S. Ct. 295, 297 n.3, 89 L. Ed. 301 (1945)). Courts look not to the common law definition of employment, but rather to the "economic reality" of whether the putative employee is economically dependent upon the alleged employer. *See Rutherford Food Corp.*, 331 U.S. at 730, 67 S. Ct. at 1477; *Aimable v. Long & Scott Farms*, 20 F.3d 434 (11th Cir. 1994).
>
> In assessing economic dependence, the Court will consider six factors: (I) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business. *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (citing *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S. Ct. 1547, 1550, 91 L. Ed. 1947; *United States v. Silk*, 331 U.S. 704, 716, 67 S. Ct. 1463, 1469, 91 L. Ed. 1757 (1947); and *Rutherford*, 331 U.S. at 730, 67 S. Ct. at 1477); *see Donovan v. Tehco*, 642 F.2d 141, 143 (5th Cir. 1981) (applying the first five factors); *see also* 29 C.F.R. § 500.20(h)(4) (regulations under the Migrant and Seasonal

Agricultural Protection Act rely on *Real* for a definition of employment and enumerate the same six factors).

*Harrell v. Diamond A Entertainment*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997).

### *1) Degree of Control by Adams Homes*

The following undisputed facts are material to this factor: (1) Demers established her own corporation over which she had exclusive control; (2) Demers was paid by commission; (3) Demers controlled her own retirement benefits and health insurance; (4) Demers' sales agreement could be terminated upon notice; (5) Demers paid for her own cell phone; (6) Demers had to sign an exclusive agreement, under which she was only allowed to sell Adams Homes; (7) Demers had to get approval to take vacation and was restricted on the amount of time she could take off (*See* Gunn Depo. at Pl. Exh. 2.); (8) Demers was not allowed to choose a Sales Agent to cover for her while she was on vacation (*See* Gunn Depo. at Pl. Exh. 2.); (9) Adams Homes told Demers which model homes to work from; (10) Demers was required to attend weekly meetings at Adams Homes' Port St. Lucie office (*See* Gunn Depo. at Pl. Exh. 2.); (11) Adams Homes provided office supplies, marketing supplies, contract forms, brochures, signs, business cards and promotional materials to Demers (*See* Gunn Depo. at Pl. Exh. 2.); (12) Adams Homes instructed Demers on how to speak to clients, including specific words she should use; (13) Adams Homes paid for Demers' pager and the utilities and telephone at the model home (*See* Gunn Depo. at Pl. Exh. 2.); (14) Adams Homes required Demers to dress professionally for work; (15) Adams Homes paid Demers' local Board of Realtors membership fees and MLS fees; (16) Adams Homes required Demers to call a minimum of 5 real estate offices per week, meet with at least 2 Realtors per week, invite outside Realtors and brokers to lunch at least twice per month, and sponsor at least one

Realtor event each month (*See* Gunn Depo. at Pl. Exh. 2.); (17) Demers had to submit weekly reports to Adams Homes detailing her meetings with outside Realtors (*See* Gunn Depo. at Pl. Exh. 2.); (18) Adams Homes told Demers which lots and floor plans to sell and, at some points in time, limited the number of sales she was allowed to make (*See* Demers 1st Depo. at 126); (19) Adams Homes monitored Demers through the use of "secret shoppers"; and (20) Adams Homes assigned Demers a partner Sales Agent, with whom she was required to share her model home and commission.

It is quite clear from the record that Adams Homes exerted a high degree of control over Demers. "Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1312-13 (5th Cir. 1976).[5] Even though Demers established CDI as her own corporation, it is clear that in reality, Adams Homes' relationship was with Demers, not CDI. Adams Homes exerted complete control over the sales Demers made and the compensation she received. This Court finds that this factor weighs heavily in favor of an employer-employee relationship.

### 2) Relative Investments

It is also clear from the record that Adams Homes' investment was significantly larger than Demers. In fact, it appears that the only expenses Demers paid for herself were incidental supplies, her cell phone and her car, which were used for personal as well as business purposes and are

---

[5] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

therefore somewhat diluted. *See Molina v. S. Fla. Express Bankserv, Inc.*, 420 F. Supp. 2d 1276, 1285 (M.D. Fla. 2006). As discussed above, Adams Homes paid for the majority of Demers' supplies, including the utilities and telephone at her model home, as well as Demers' pager, her MLS fees and her Board membership fees. Therefore, this factor also weighs in favor of an employer-employee relationship.

### 3) Opportunity for Profit and Loss

While Demers was paid on a commission basis, she still had very little control over her profit and/or loss. She was told which lots to sell, which floor plans to sell, and she was limited as to how many she could sell. Furthermore, she was required to sell homes in the manner proscribed by Adams Homes and to share her profits with a partner. "Finally, the fact that an individual could request more work or re-negotiate his or her compensation is not indicative of independent contractor status, because any employee can do those things as well. *Halferty*, 821 F.2d at 266." *Molina,* 420 F. Supp. 2d at 1286. This factors weighs in favor of an employer-employee relationship as well.

### 4) Skill and Initiative Required

As a Sales Agent for Adams Homes, Demers was required to be a licensed Realtor and to use her professional skills to sell homes. However, "even if an individual has specialized skills, that is not indicative of independent contractor status where the individual does not use those skills in an independent fashion. *Baker*, 860 F. Supp. at 776." *Molina*, 420 F. Supp. 2d at 1286. Certainly, Demers was required to have some persuasive ability to perform her function as a Sales Agent. However, unlike a typical Realtor, most of the specialized knowledge Demers required came from Adams Homes. Because she was selling homes for only one builder, in one area, she

was simply required to have knowledge in those specific topics. This knowledge was provided by the Plan as well as the training Adams Homes provided to Demers. The fact that she was even instructed on the words to use when speaking to customers demonstrates that Demers was required to use very little, if any, of her own skill and initiative. Therefore, this factor weighs in favor of employee status as well.

### 5) Permanency of the Relationship

Demers worked for Adams Homes for several years, however, her contract was terminable upon notice by either party. Therefore, it appears that the relationship was ostensibly permanent and therefore, this factor would weigh in favor of independent contractor status. However, Florida is an "at-will employment" State, which means that employment relationships are generally terminable at will by either party. Furthermore, Demers' relationship with Adams Homes was exclusive, which is atypical for independent contractors. Therefore, this Court finds that while this factor is of little help in this analysis, it weighs slightly in favor of employee status.

### 6) Whether Plaintiff's Services were Integral to Defendant's Business

Adams Homes is a homebuilder, in the business of building and selling homes. Demers' function was to sell Adams Homes, exclusively. Therefore, it is clear that her services were integral to Adams Homes business, and this factor weighs in favor of an employer-employee relationship.

### 7) The Circumstances of the Whole Activity

Ultimately, the Court must determine whether [Demers] was dependent upon [Adams Homes]. The "economic dependence" at issue "is dependence on that job for that income to be continued and not necessarily for complete sustenance." *Halferty*, 821 F.2d at 267. Further, "the proper test of economic dependence mandates consideration of all the factors, and in light of such consideration examines whether the workers are dependent on a

particular business or organization for their continued employment in that line of business." *Id*. at 267-68 (internal citation and quotation omitted); *see also Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 324 (S.D.N.Y. 2001) ("The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in the business for themselves.") (internal citation and quotation omitted).

*Molina*, 420 F. Supp. 2d at 1287.

Defendant urges this Court to determine that Demers was an independent contractor primarily because she was an employee of CDI and she paid her taxes as if she were self-employed. However, despite Defendants' diligent efforts to convince this Court otherwise, this is not a case about Demers' compliance (or lack of compliance) with the income tax code, and this Court will not address those issues. Instead, this Court must decide the relationship between these two parties based on the economic realities of the situation.

A review of the factors, and the evidence pertinent to each, demonstrates that the Plaintiff actually served in an employee relationship with Adams Homes. Demers was not so independent of Adams Homes as to be in business for herself. Instead, it appears that Plaintiff depended on Adams Homes for her employment in the real estate industry. Therefore, this Court finds that, at all times relevant to this action, Demers was an employee of Adams Homes under the FMLA.

### B. Title VII and the FWA

Title VII offers little guidance on the distinction between an employee and an independent contractor. Title VII defines "employee" as "an individual employed by an employer."42 U.S.C. 2000e(f). Because there is "no indication that Congress intended the words of the statute[s] to have anything but their ordinary meaning as commonly understood," the term "employee … is to be construed in light of general common law concepts" taking into account the "economic realities of the relationship." *Cobb*, 673 F.2d at 340-341. This so called "hybrid economic realities test" demands that "the common law principles of agency and the right of the employer to control the employee" be used to determine the employee's status. *Id*. at 341.

> Among the common law factors that are to be considered in conducting the analysis are: (1) the intention of the parties; (2) the skill required in the particular occupation; (3) the party furnishing the equipment and the place of work; (4) the method of payment, whether by time or by the job; (5) the type of employment benefits provided; (6) the manner in which the work relationship is terminated; (7) the importance of the work performed as part of the business of the employer; and (8) the manner in which taxes on income is paid. *See id.* In assessing the amount of control an employer exercises over the employee's work duties, courts look not only to the results that are to be achieved, but the "manner and means by which the work is accomplished." *Daughtrey v. Honeywell*, 3 F.3d 1488, 1496 (11th Cir. 1993).

*Dahl v. Ameri-Life Health Servs. of Sara-Bay, LLC*, 2006 U.S. Dist. LEXIS 73797, *10-11 (M.D. Fla. October 10, 2006).

As discussed above, the 2nd, 3rd and 7th factors favor the conclusion that Demers was an employee of Adams Homes. However, the 4th, 5th and 8th factors clearly favor independent contractor status. The remaining factors: the intention of the parties and the manner in which the work relationship is terminated, are neutral. However, as this Court stated above, it is clear from the record that Demers did not exercise meaningful control over the work she performed for Adams Homes. Therefore, the Court finds that Demers was an employee for purposes of Title VII and the FWA as well.[6]

---

[6] It is undisputed that the same test applies under both Title VII and the FWA.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 27) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 7, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party