**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**COLLEEN DEMERS,**

            **Plaintiff,**

-vs-                                    **Case No. 6:06-cv-1235-Orl-31KRS**

**ADAMS HOMES OF NORTHWEST**
**FLORIDA, INC., and MATTHEW**
**MALONE,**

            **Defendants.**

## ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. 18) and Plaintiff's Response thereto (Doc. 32).[1]

**I. Background**

Plaintiff brings this case alleging violations of the Family Medical Leave Act of 1993, as amended, 42 U.S.C. §§ 2000(e), *et seq*. ("the FMLA"); Title VII of the Civil Rights Act of 1964, as amended, 29 U.S.C. §§ 2601, *et seq*. ("Title VII") and the Florida Private Whistleblower Act, Fla. Stat. §§ 448.101, *et seq*. ("the FWA").

In July of 2002 Plaintiff Colleen Demers ("Demers") became a licensed Realtor in the state of Florida and began training to become a Sales Agent for Defendant Adams Homes of Northwest

---

[1] Both Defendants' Motion and Plaintiff's Response were incorrectly formatted, in violation of Local Rule 1.05(a). Furthermore, had these documents been properly formatted, it is likely that they would have exceeded the page limits set forth in Local Rule 3.01(a). In the interest of efficiency, the Court has decided not to strike these documents, however, Counsel should be aware that failure to abide by the Local Rules in the future may result in sanctions.

Florida, Inc. ("Adams Homes"). Then, in August of 2002, Demers and Adams Homes entered into an Exclusive Marketing and Selling Agreement ("the Agreement") (Doc. 18-3 at 2), which was terminable at will by either party. (Doc. 18 at 2-3; Doc. 27 at 5).[2]

From August 2002 until January 11, 2006, Demers acted as a Sales Agent for Adams Homes' Port St. Lucie office, selling new homes and home sites to consumers in exchange for a commission. As a Sales Agent, Demers was supervised by Sales Manager Elizabeth Porter ("Porter") from June 1, 2005 until January 11, 2006. Porter Depo at 29. Porter, in turn, was supervised by General Manager Peter Gunn ("Gunn") and Regional Manager Matthew Malone ("Malone").

During her tenure with Adams Homes, Demers received several awards including a "Committed to Excellence Award" in August 2003, "Sales Person of the Month" in September and November of 2002, "Sales Team of the Month" for October 2002, "Sales Team of the Quarter" in the 3rd quarter of 2002, "Record Breaking Sales" in March and May 2003, and "Above & Beyond Award" in April 2003. In June 2003, Adams Homes stopped issuing awards, however, in August of 2005, Demers received a "Three Year Outstanding Customer Sales and Service Award."

In approximately July of 2005, Demers informed Gunn and Malone that she was pregnant. (Doc. 18 at 6; Doc. 27 at 14). Gunn congratulated Demers, but informed her that he could not make any promises to her regarding maternity leave. Gunn Depo. at 20, 36-37; Demers 1st Depo.

---

[2]Periodically, the Agreement was renewed by the parties. (Doc. 18-3 at 3-6; Doc. 18 at 3, n.2; Doc. 27 at 5). The four embodiments of the Agreement contain substantially the same terms, and will be referred to collectively as "the Agreement" unless otherwise noted.

at 191. At this meeting, Demers also indicated that she was interested in becoming a Sales Manager and Gunn told her that was "great". Gunn Depo. at 23.

On January 9, 2006, Demers met with Porter to discuss her upcoming maternity leave. Demers 1st Depo. at 108. Porter informed Demers that, according to Malone, if Demers took more than two days off to have her baby that she would be fired.[3] Demers 1st Depo. at 108-09, 190-91. Demers testified that Porter quoted Malone as saying that the problem with pregnant women is that you never know if or when they are going to come back to work. Demers 1st Depo. at 191. Demers objected to such a limited maternity leave and told Porter that she wanted to talk to Malone about this issue. (Doc. 29-2 at 2). At this meeting, Porter also complimented Demers on her recent sales and discussed the possibility of Demers being assigned a new partner because her current partner, Claudia Anotonakos ("Anotonakos"), was not carrying her workload. Demers 1st Depo. at 190.[4]

On January 10th, Porter, Gunn and Malone met in Orlando and discussed several of the Sales Agents in the Port St. Lucie office. Porter indicated to Gunn and Malone that she felt it would be best to terminate Demers and Anotonakos, because she was having problems with them. Porter Depo. at 34. Gunn and Malone apparently supported her decision. Porter Depo. at 34.

---

[3] Malone admitted to discussing Demers' request for maternity leave with Porter approximately a month before Demers was terminated. Malone Depo. at 15-19. He testified that he told Porter to "go by the agreement". Malone Depo. at 16. There was no provision for maternity leave in the Agreement, therefore Sales Agents had to use their vacation time. Malone Depo. at 17-18. If a Sales Agent took off more than two weeks in one year for this or any other purpose, she would be terminated. Malone Depo. at 17-18. Malone testified that when a Sales Agent took maternity leave beyond her allotted vacation, he could not guarantee them a position to come back to. Malone Depo. at 16-17.

[4] Gunn also recalls asking Demers a few days before her termination if she would be interested in a new partner and who she might prefer to partner with. Gunn Depo. at 42.

On January 11, 2006, Porter and Gunn went to Demers' model home and informed her that Adams Homes was terminating her. (Doc. 18 at 7; Doc. 27 at 15). At the time, Gunn stated that the company was moving in a new direction and Demers was not part of that plan. Demers 1st Depo. at 107; Porter Depo. at 93-94. However, in their depositions, Porter and Gunn indicated that Demers was terminated because of her poor attitude. Gunn Depo. at 22; Porter Depo. at 29, 34. Prior to her termination, Demers had never been counseled for having a poor attitude or poor sales. (Doc. 29-2 at 2). In fact, on the same day Demers was terminated, she was offered a position as Sales Manager in Adams Homes' Ocala office by Scott McQueen. Demers 1st Depo. at 131; Porter Depo. at 99-100.

**II. Standard of Review**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and

citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

**III. Legal Analysis**[5]

**Count I: Interference with Plaintiff's Rights Under the FMLA**

Adams Homes argues that Demers is not an eligible employee under the FMLA because she was employed at a worksite at which there was less than 50 employees within 75 miles of that worksite. *See* 29 U.S.C. § 2611(B)(ii). However, Demers testified that, at the time of her employment, Adams Homes had approximately 32 employees at its Port St. Lucie office. (Doc. 25-4 at 18). Furthermore, Wayne Adams testified that three were three other offices within 75 miles of Port St. Lucie (Melbourne, Palm Bay and Sebastian/Vero Beach) with at least 10 employees each. (Doc. 29-10 at 3, 8). Defendant has presented no evidence to refute these numbers. Therefore, this argument fails.

---

[5]This Court has already determined that Demers was an employee of Adams Homes under the FMLA, Title VII and the FWA, rather than an independent contractor. (See this Court's Order of November 7, 2007, at Doc. 33). Therefore Defendants' arguments with regard to those issues will not be addressed.

Defendants also argue that Demers was terminated for reasons other than her requesting leave and that Demers' claim for damages is speculative. Both of these arguments ask the Court to resolve questions of fact, which is inappropriate at the summary judgment stage.

**Count II: Retaliation in Violation of the FMLA**

Defendants argue that Plaintiff has failed to show retaliatory intent because her termination occurred six months after she informed Gunn and Malone of her pregnancy. This argument fails because intent is a factual issue to be determined at trial. Furthermore, her termination occurred only two days after Demers complained to Porter about the lack of maternity leave.

**Count III: Pregnancy Discrimination in Violation of Title VII**

To establish a *prima facie* case of employment discrimination under Title VII, the plaintiff must meet the *McDonnell Douglas* test[6] by showing: "(1) that she is a member of a protected class, (2) that she is entitled to or qualified for the position, (3) that she suffered an adverse employment action, and (4) that she was treated less favorably than similarly situated employees who are not members of her protected class." *Hanley v. Sports Authority,* 143 F.Supp.2d 1351, 1355-6 (S.D. Fla. 2000) (citing *Holifield v. Reno,* 115 F.3d 1555 (11th Cir. 1997)).

Establishment of a *prima facie* case of discrimination creates a rebuttable presumption of discrimination in favor of the plaintiff. The burden of production then shifts to the defendant "to articulate some legitimate nondiscriminatory reason" for the employer's actions. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996). Once the defendant has offered a nondiscriminatory explanation for its decision, the presumption of illegal discrimination is

---

[6]*See McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973).

destroyed. The burden then falls on the plaintiff to show that the employer's explanations are merely pre-textual. *See McDonnell,* 411 U.S. at 804.

Plaintiff is not required to produce evidence of specific acts or statements showing discriminatory intent on the part of the employer. *See Combs v. Plantation Patterns, Meadowcraft, Inc.,* 106 F.3d 1519, 1538. (1997) "A plaintiff in a discrimination case based on circumstantial evidence can avoid judgment as a matter of law by putting on a *prima facie* case and by producing evidence sufficient to discredit in the mind of a reasonable juror all of the defendant's proffered nondiscriminatory reasons for its actions." *Id*.

> [O]nce the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's *prima facie* case taken together with rejection of the employer's explanations for its action. At that point, judgment as a matter of law is unavailable.

*Id.*

Defendants do not dispute that Plaintiff has established a *prima facie* case under Title VII. Instead, it is argued that legitimate non-discriminatory reasons for terminating Demers have been provided (i.e. her poor attitude). However, Plaintiff has put forth enough evidence to create a jury question as to whether this stated reason was pre-textual. Therefore, summary judgment will not be granted on this count.

**Count IV: Retaliation under Title VII**

"Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this subchapter.' 42 U.S.C. § 2000e-3(a)." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). In order to maintain a claim for retaliation under Title VII, a plaintiff must show that "(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." *Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004).

Defendants argue that Plaintiff did not engage in any protected activity before she was terminated. However, Demers states that she did engage in protected activity on January 9, 2006 because when Porter told her that she could only take off 2 days to have her baby, she objected and stated that she would be contacting Malone, Porter's superior, about the issue. Therefore, viewing the facts in the light most favorable to the non-moving party, Plaintiff has established a *prima facie* case of retaliation under Title VII.

**Count V: Retaliation Under the FWA**

According to the FWA,

An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. § 448.102.

Defendant argues that Demers did not engage in any statutorily protected activity under the FWA. Plaintiff responds that because she has present sufficient evidence to support her claims under the FMLA and Title VII, summary judgment should not be granted on her FWA claim. This statement fails to demonstrate that Demers engaged in protected activity under the FWA, and there is no evidence that Plaintiff had "blown the whistle" on Adams Homes prior to her termination. Therefore, Defendants are entitled to summary judgment on Count V.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. 18) is **GRANTED** in part and **DENIED** in part. Count V is hereby **DISMISSED** with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 7, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party